CLERK'S OFFICE U.S. DISTRICT. COURT
AT ROANOKE, VA
FILED

NOV 06 2024

LAURA A. AUSTIN, CLERK
BY: ___m·Poke___
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal No. 7:16-cr-30026 |
| v. | ) | |
| | ) | By: Michael F. Urbanski |
| RONNIE MONROE NICHOLAS, JR., | ) | Senior United States District Judge |
| Defendant-Petitioner | ) | |

## MEMORANDUM OPINION

This matter comes before the court on defendant Ronnie Monroe Nicholas, Jr.'s

motion for compassionate release brought pursuant to 18 U.S.C. § 3582(c)(1)(A). Nicholas

filed a pro se motion on October 11, 2023, ECF No. 1425, and the Federal Public Defender

filed a supplemental motion on his behalf on October 31, 2023. ECF No. 1429. The

government responded in opposition, ECF No. 1432, and Nicholas filed a reply. ECF No.

1437. As set forth below, the court will **DENY** Nicholas' motions.

### I. Background

On August 9, 2017, Nicholas and seven codefendants who were either members of the

Mad Stone Bloods (MSB) gang or associated with members were charged with eight counts

related to engaging in a racketeering conspiracy, conspiring to distribute drugs, and firearm

offenses. Superseding Indictment, ECF No. 526. Nicholas was charged with one count of

conspiring with other gang members to violate 18 U.S.C. § 1962(c), that is, to conduct and

participate, directly and indirectly, in the conduct of the enterprise's affairs through a pattern

of racketeering activity (Count One); and conspiring to distribute and possess with intent to

distribute heroin, cocaine base, powder cocaine, methamphetamine, marijuana,

buprenorphine, and naloxone in violation of 21 U.S.C. § 841(a)(1), all in violation of 21 U.S.C. § 846 (Count Two). Id.

On September 11, 2017, Nicholas entered into a plea agreement in which he agreed to plead guilty to Count One of the superseding indictment. Plea Agreement, ECF No. 754. According to the Presentence Investigation Report (PSR), Nicholas' main roles within the MSB were to further relationships within the gang and facilitate the drug trade within the Virginia prison system, and it did not appear that he was directly involved in the gang's violent activities. PSR, ECF No. 1293 ¶ 142.

Nicholas was found responsible for a converted drug weight of 32.7 kilograms of marijuana. Id. ¶¶ 142–43. He had a base offense level of 16, increased by 2 levels for possessing a firearm and by 2 additional levels for distribution of controlled substances in a correctional facility, and decreased by 3 levels for acceptance of responsibility, giving him an adjusted total offense level of 17. Id. ¶¶ 150–56. However, he was found to be a career offender under USSG § 4B1.1(b)(3), which gave him a base offense level of 32, decreased by three points to 29. Id. ¶¶ 157–160. Both with and without the career offender designation, Nicholas' criminal history category was VI. Id. ¶¶ 172–74. Nicholas faced a maximum statutory sentence of 20 years under 18 U.S.C. § 1962(d). PSR, ECF No. 192. His total offense score of 29 with his criminal history category of VI gave him a guidelines sentence of 151 to 188 months. Id. ¶ 193; USSG Ch. 5 Pt. A.

On May 9, 2018, Nicholas was sentenced to a term of 144 months, to be followed by a 3-year period of supervised release. J., ECF No. 1173. The court varied downward from the guidelines to avoid an unwarranted sentencing disparity between Nicholas and a co-defendant,

Clifford Jennings, finding that they had similar criminal backgrounds and culpability. Statement of Reasons, ECF No. 1174 at 3. Nicholas is incarcerated at Federal Correctional Institution Marianna and has a projected release date of January 14, 2026.[1]

In his supplemental motion, Nicholas contends that if he were sentenced today, he would not be considered a career offender, and his sentencing range would be greatly reduced. He argues that because his only count of conviction is a count of conspiracy, he cannot be considered a career offender under United States v. Norman, 935 F.3d 232 (4th Cir. 2019). In Norman, which was decided after Nicholas was sentenced, the Fourth Circuit determined that convictions for conspiracy to distribute drugs are no longer considered controlled substance offenses under USSG § 4B1.2. The court reasoned that because the "generic, contemporary meaning" of "conspiracy" requires an overt act, and "conspiracy" under § 846 does not require an overt act, § 846 criminalizes a broader range of conduct than that covered by generic conspiracy. Norman. 935 F.3d at 236–38. Accordingly, if sentenced today, Nicholas' conspiracy offense would not be considered a controlled substance offense and therefore would not satisfy the requirements of USSG §4B1.1(b). Without the career offender designation, Nicholas' total offense level would be 17 and his offense level combined with his criminal history category of VI would result in a guidelines sentence of 51 to 63 months. USSG Ch. 5 Pt. A.

---

[1] https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (search "Ronnie Monroe Nicholas") (last viewed Oct. 8, 2024).

## II. Analysis

### A. Timing of Motions and Briefs

Before turning to the merits of Nicholas' motion, the court notes that Nicholas filed his pro se motion for compassionate release approximately one week before the United States Sentencing Commission (the Commission) amended USSG § 1B1.13, the policy statement that deals with compassionate release, and counsel supplemented his petition the day before the new policy statement took effect. Mots., ECF Nos. 1425, 1429. Nicholas argues that he was eligible for compassionate release under the Fourth Circuit decision in United States v. McCoy, 981 F.3d 271 (4th Cir. 2020).

The government responds that Nicholas was not entitled to relief under § 1B1.13(b)(6) of the new policy statement. ECF No. 1432. Nicholas argues in his reply brief, ECF No. 1437, that the court should not apply the policy statement, but instead look to the law that was in place prior to enactment of the policy statement. Alternatively, Nicholas argues that if the court finds that the policy statement is applicable to his case, that he nevertheless qualifies under the "catch-all" provision in USSG § 1B1.13(b)(5).

Nicholas did not raise his argument regarding the applicability of the revised policy statement in general, or the applicability of § 1B1.13(b)(5) in particular, until he filed his reply brief. The government had ample time to request permission to reply to these arguments but did not do so. See Local Rule 11(c)(1) (directing that after motion, response, and reply briefs are filed, a party seeking to file an additional brief must first seek leave of court). "Generally, 'new arguments cannot be raised in a reply brief.'" De Simone v. VSL Pharmaceuticals, Inc. 36 F.4th 518, 531 (4th Cir. 2022) (quoting United States v. Smalls, 720 F.3d 193, 197 (4th Cir.

4

2013)). "A contrary rule runs the risk of depriving a nonmovant an opportunity to respond." Id. (citing Mt. Hebron Dist. Missionary Baptist Ass'n. of AL v. Sentinel Ins. Co., No. 16-cv-658, 2018 WL 6822821, at *1 (M.D. Ala. Oct. 24, 2018)).

However, a district court may consider an argument raised for the first time in a reply brief under appropriate circumstances. Id. (citing Clawson v. FedEx Ground Package Sys., Inc., 451 F.Supp.2d 731, 734 (D. Md. 2006)). Two circumstances that favor allowing a party to raise a new ground in a reply brief include when the untimely argument is "intimately related" to the original grounds for the motion, and when a non-movant has an opportunity to contest an untimely argument in a sur-reply. Id.

In this case, both circumstances exist. Nicholas did not raise his arguments regarding the revised policy statement in his supplemental motion, which was filed the day before the revised policy statement took effect. However, the government addressed the new policy statement in its response and argued that it precludes relief for Nicholas. Therefore, Nicholas' argument regarding the new policy statement is intimately related to the original grounds for his motion. In addition, the government had an opportunity to seek permission to file a sur-reply under Local Rule 11(c)(1), although it did not do so. Given these two circumstances, the court will consider the arguments Nicholas raised for the first time in his reply.

### B. Merits

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018 (FSA), authorizes courts to modify terms of imprisonment as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all

> administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . <u>and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.</u>

(emphasis added).

Prior to enactment of the First Step Act of 2018, only the Bureau of Prisons could file a motion for compassionate release on behalf of an inmate. <u>United States v. High</u>, 997 F.3d 181, 185 (4th Cir. 2021) (citing 18 U.S.C. § 3582(c)(1)(A) (2002)). The First Step Act, among other changes, amended § 3582(c)(1)(A) to allow inmates to file motions with a district court on their own behalf after exhausting their administrative remedies.

The statute requires that any reduction based on an extraordinary and compelling reason be consistent with applicable policy statements issued by the Commission. But, prior to March 2023, there were no "applicable policy statements" to reference, because the Commission lacked a quorum and could not act. <u>See</u> <u>discussion</u>, <u>McCoy</u>, 981 F.3d at 280–84.[2] In the absence of applicable policy statements, courts looked to relevant sentencing guidelines provisions to determine whether a motion presented an extraordinary and compelling reason

---

[2] <u>See</u> <u>also</u> U.S. Sentencing Comm'n Annual Report 2–3 (2019) https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2019/2019-Annual-Report.pdf.

warranting a sentence reduction. <u>United States v. Davis</u>, 99 F.4th 647, 654 (4th Cir. 2024). Courts in the Fourth Circuit (and other circuits) held that a change in law that resulted in a gross disparity between the sentence a defendant received and the sentence that he likely would receive were he convicted today could be an extraordinary and compelling reason warranting a sentence reduction. See <u>McCoy</u>, 981 F.3d at 286, and the cases that followed it.

In May 2023, the Commission achieved a quorum and adopted revised guidelines that became effective November 1, 2023. Included in the revisions was a policy statement addressing motions for sentence reduction under 18 U.S.C. § 3582(c)(1)(A) when a defendant alleges that "extraordinary and compelling" reasons warrant a reduction. See U.S. SENT'G COMM'N, GUIDELINES MANUAL § 1B1.13 (NOV. 2023). The policy statement now provides in USSG § 1B1.13(b) that an "extraordinary and compelling" reason warranting compassionate release can exist under any of the following circumstances, each of which includes detailed requirements and caveats:

(1) Medical Circumstances of the Defendant

(2) Age of the Defendant

(3) Family Circumstances of the Defendant

(4) Victim of Abuse

(5) Other reasons

(6) Unusually Long Sentence

Turning first to the last circumstance, "unusually long sentence," and the limitation that follows it in § 1B1.13(c), the policy statement provides that a defendant is eligible for a sentence reduction if he can show the following:

(6) Unusually Long Sentence.--If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

(c) Limitations on Changes in Law.--Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

USSG §§1B1.13(b)(6) and (c) (emphasis added).

Nicholas is serving a term of 144 months, based on his status as a career offender. He argues that if he were sentenced today, after Norman, he no longer would be considered a career offender, and his guidelines range would be 51 to 63 months rather than the range of 151 to 188 months that applied at the time he was sentenced. He contends that he likely would be assessed a much shorter sentence today and that the difference in the sentences is a gross disparity that warrants compassionate release. However, Nicholas has not yet served 10 years of his sentence. Apparently recognizing that he does not qualify for relief under § 1B1.13(b)(6)

because he has not yet served 10 years, he does not pursue relief under this section, but offers two alternative arguments for relief.[3]

### (1) Application of § 1B1.13 to Motions Filed Before It Took Effect

Nicholas first argues that the court should not address his motion for compassionate release using the policy statement issued by the Commission on November 1, 2023, but instead should use the standard set forth by the Fourth Circuit in McCoy, 981 F.3d 271, 285 (quoting United States v. Zullo, 976 F.3d 228, 230 (2d Cir. 2020)): "There is as of now no 'applicable' policy statement governing compassionate-release motions filed by defendants under the recently amended § 3582(c)(1)(A), and as a result, district courts are 'empowered ... to consider any extraordinary and compelling reason for release that a defendant might raise.'"

Nicholas filed his motion for compassionate release prior to enactment of the policy statement and asserts that there is no indication in the statute or in § 1B1.13 that the policy statement was intended to have retroactive effect. Pet'r's Reply, ECF No. 1437 at 1. Therefore, he argues, the court need not consider the revised policy statement, but can rely on the Fourth Circuit's holding in McCoy, which did not require that a petitioner have served 10 years before being considered eligible for compassionate release for serving a sentence that likely would be much shorter today following a change in the law.

Nicholas contends that general non-retroactivity principles apply, citing in support Fernandez-Vargas v. Gonzales, 548 U.S. 30, 37 (2006) (citing Landgraf v. USI Film Products, 511 U.S. 244 (1994)). Fernandez-Vargas addressed a case where a citizen of Mexico entered

---

[3] See Pet'r's Reply, ECF No. 1437 at 6 n.2 ("As Mr. Nicholas does not argue that § 1B1.13(b)(6) applies to his circumstances, this Court need not take up the government's challenge to the Sentencing Commission's authority to promulgate this subsection.")

the United States illegally and remained for 20 years. When the United States government

learned that he was in the country illegally, it started deportation proceedings under the Illegal

Immigration Reform and Immigrant Responsibility Act of 1996, which was passed by

Congress after <u>Fernandez-Vargas</u> entered the United States. <u>Id.</u> at 36. The Court stated the

following about retroactive application of statutes:

> Statutes are disfavored as retroactive when their application
> "would impair rights a party possessed when he acted, increase a
> party's liability for past conduct, or impose new duties with
> respect to transactions already completed." <u>Landgraf</u>, <u>supra</u>, at
> 280, 114 S.Ct. 1483. The modern law thus follows Justice Story's
> definition of a retroactive statute, as "tak[ing] away or impair[ing]
> vested rights acquired under existing laws, or creat[ing] a new
> obligation, impos[ing] a new duty, or attach[ing] a new disability,
> in respect to transactions or considerations already past," <u>Society</u>
> <u>for the Propagation of the Gospel v. Wheeler</u>, 22 F.Cas. 756, 767
> (No. 13,156) (CCNH 1814). Accordingly, it has become "a rule
> of general application" that "a statute shall not be given
> retroactive effect unless such construction is required by explicit
> language or by necessary implication." <u>United States v. St. Louis,</u>
> <u>S.F. & T.R. Co.</u>, 270 U.S. 1, 3, 46 S.Ct. 182, 70 L.Ed. 435 (1926)
> (opinion for the Court by Brandeis, J.).
>
> This Court has worked out a sequence of analysis when an
> objection is made to applying a particular statute said to affect a
> vested right or to impose some burden on the basis of an act or
> event preceding the statute's enactment. We first look to
> "whether Congress has expressly prescribed the statute's proper
> reach," <u>Landgraf</u>, <u>supra</u>, at 280, 114 S.Ct. 1483, and in the
> absence of language as helpful as that we try to draw a
> comparably firm conclusion about the temporal reach specifically
> intended by applying "our normal rules of construction," <u>Lindh</u>
> <u>v. Murphy</u>, 521 U.S. 320, 326, 117 S.Ct. 2059, 138 L.Ed.2d 481
> (1997). If that effort fails, we ask whether applying the statute to
> the person objecting would have a retroactive consequence in the
> disfavored sense of "affecting substantive rights, liabilities, or
> duties [on the basis of] conduct arising before [its] enactment,"
> <u>Landgraf</u>, supra, at 278, 114 S.Ct. 1483; <u>see also</u> <u>Lindh</u>, <u>supra</u>, at
> 326, 117 S.Ct. 2059. If the answer is yes, we then apply the
> presumption against retroactivity by construing the statute as

> inapplicable to the event or act in question owing to the "absen[ce of] a clear indication from Congress that it intended such a result." INS v. St. Cyr, 533 U.S. 289, 316, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001); see Martin v. Hadix, 527 U.S. 343, 352, 119 S.Ct. 1998, 144 L.Ed.2d 347 (1999) (quoting Landgraf, supra, at 280, 114 S.Ct. 1483).

Fernandez-Vargas, 548 U.S. at 37.

Nicholas argues that there is no language in § 1B1.13 that provides that the policy statement applies to cases that were exhausted and filed before it was enacted. While this is true, the statute that provides for a sentence reduction, 18 U.S.C. § 3582(c)(1)(A)(ii), states that a court can only reduce a sentence if it finds that a reduction is "consistent with applicable policy statements issued by the Sentencing Commission." This language has applied to motions for sentence reductions since the statute was enacted in 1996 and does not run afoul of the retroactivity concerns set out in Fernandez-Vargas and Landgraf.

Moreover, construing the statute to apply the revised policy statement is required both by "explicit language" and "necessary implication." Fernandez-Vargas, 548 U.S. at 37. The statute directs that courts can grant sentence reductions only when a reduction is consistent with applicable policy statements issued by the Sentencing Commission. Although prior to November 1, 2023, there was no applicable policy statement, the Commission has since promulgated one. For this court to pretend that a relevant policy statement does not now exist and look only to McCoy to analyze Nicholas' motion would conflict with the explicit language of the statute as well as the implication that when the Commission promulgates a policy

statement, courts must abide by it.[4] In addition, ignoring the new policy statement would be inconsistent with McCoy itself where the court noted that when the Commission exercised its statutory authority to update its guidance to the district courts, "courts will be required to ensure that any sentence reductions granted on defendants' motions are consistent with that guidance, assuming, of course, that such guidance violates no statutory or constitutional provision." McCoy, 981 F.3d at 284.

Although courts decided compassionate release motions without the benefit of an applicable policy statement prior to November 1, 2023, since that day, many courts, including this one, have looked to the policy statement for guidance for motions filed before its effective date. See, e.g., United States v. Fields, No. 5:12-CR-00002, 2024 WL 4520353 (W.D. Va. Oct. 17, 2024); United States v. Brown, No. 2:95-cr-66(2), 2024 WL 409062 (S.D. Ohio Feb. 2, 2024) (applying § 1B1.13 to motion for compassionate release filed prior to November 1, 2023 and finding petitioner eligible for relief); United States v. Capps, No. 1:11-cr-00108-AGF, 2024 WL 880554 (E.D. Mo. Jan. 31, 2024) (same); United States v. Padgett, 713 F.Supp.3d 1223 (N.D. Fla. Jan. 30, 2024) (same). Indeed, the Fourth Circuit in Davis, 99 F.4th at 658, remanded a case where the petitioner sought compassionate release via a motion filed before November 1, 2023, with instructions for the district court to revisit the petitioner's motion "in light of the Sentencing Commission's new policy statement outlining when and how to consider changes in the law as an extraordinary and compelling reason for a reduction." Based on the foregoing, the court concludes that application of § 1B1.13 to Nicholas' motion does

---

[4] Nor would it make sense to use the version of the guidelines in effect when Nicholas committed his offense in 2016, or those in effect at the time he was sentenced in May 2018, because prior to the First Step Act, he could not have brought a compassionate release petition on his own behalf.

not raise retroactivity concerns and will analyze his motion in light of the revised policy statement.

### (2) Section 1B1.13(b)(5)

As noted above, Nicholas contends that if the court finds that § 1B1.13 applies to his case, he does not seek relief under § 1B1.13(b)(6), which addresses unusually long sentences and requires a petitioner to have served at least 10 years of a sentence before being eligible for consideration. Rather, he seeks relief under § 1B1.13(b)(5), the "catch-all" provision that provides the following:

> Other Reasons.—The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

Nicholas argues that the court can use the catch-all provision to reduce his sentence based on changes to the career offender guideline after Norman, even though he has not yet served 10 years of the sentence. He argues that because the government asserted in its brief in opposition that Norman does not qualify as a "change in law" under § 1B1.13(b)(6), that § 1B1.13(b)(5) can be used to do what § 1B1.13(b)(6) cannot. However, this court has previously found that Norman does represent a change in the law and continues to so find. See, e.g., United States v. Naylor, No. 7:14-CR-00026, 2023 WL 4162280 (W.D. Va. June 23, 2023); United States v. Brown, Nos. 5:13-cr-00017, 5:13-cr-00030 (W.D. Va. May 10, 2022); and United States v. Manning, No. 7:12-cr-00042, 2022 WL 1464706 (W.D. Va. May 9, 2022). Thus, any sentence reduction based on Norman must be analyzed under § 1B1.13(b)(6).

In addition, § 1B1.13(c) precludes the relief that Nicholas seeks. That section provides that a change in the law shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement, <u>except</u> as provided in § 1B1.13(b)(6). Only if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement may the court consider changes in the law when determining the extent of any reduction. Because Nicholas cannot meet the 10-year requirement under § 1B1.13(b)(6), he cannot show that he is entitled to relief under the policy statement. Accordingly, because this court considers <u>Norman</u> to have effected a change in the law under § 1B1.13(b)(6), and Nicholas has not yet served 10 years of his 12 year sentence, he is not eligible for relief under § 1B1.13(b)(6), and the court will not use § 1B1.13(b)(5) to do an end-run around the 10-year requirement under § 1B1.13(b)(6).

### (3) Other Applications of the Catch-All Provision

In <u>Concepcion v. United States</u>, 597 U.S. 481 (2022), the Supreme Court noted the broad discretion a court has when it is considering a motion to modify a sentence. When a district court adjudicates a motion under the First Step Act, it may consider other intervening changes in law, such as changes to the Sentencing Guidelines, or changes in fact, such as behavior in prison, in adjudicating a First Step Act motion. "It is only when Congress or the Constitution limits the scope of information that a district court may consider in deciding whether, and to what extent, to modify a sentence, that a district court's discretion to consider information is restrained." <u>Id.</u> at 486–87.

> Because district courts are always obligated to consider nonfrivolous arguments presented by the parties, the First Step Act requires district courts to consider intervening changes when parties raise them. By its terms, however, the First Step Act does

> not compel courts to exercise their discretion to reduce any
> sentence based on those arguments.

Id. at 487. In McCoy, 981 F.3d at 284 (quoting Zullo, 976 F.3d at 230), the Fourth Circuit held

that in the absence of an applicable policy statement, courts were "'empowered . . . to consider

any extraordinary and compelling reasons for release that a defendant might raise.'"

The Commission, when explaining its reasons for the changes to the policy statement

and in particular § 1B1.13(b)(5), stated that "The amendment expands the list of specified

extraordinary and compelling reasons and retains the 'other reasons' basis for a sentence

reduction to better account for and reflect the plain language of section 3582(c)(1)(A), its

legislative history, and decisions by courts made in the absence of a binding policy statement."[5]

This rationale for promulgation of the "other reasons" category led one district court

in the Fourth Circuit to comment as follows:

> This catchall maintains the broad discretion conferred on district
> courts to consider a wide array of extraordinary and compelling
> justifications for release. When describing the reasoning behind
> the provision, the Commission stated that it "determined that, by
> retaining a broad catchall provision that allows for consideration
> of reasons similar in gravity to those enumerated in the policy
> statement, courts would have both discretion and guidance
> necessary to grant reductions in any appropriate case." Indeed,
> the catchall provision is a nod to McCoy, and other similar
> precedents, indicating that it is intended to largely maintain the
> status quo. Accordingly, in assessing a motion for compassionate
> release, the Court will "consider any extraordinary and
> compelling reason for release that a defendant might raise."
> McCoy, 981 F.3d at 284 (emphasis in original) (citation and
> quotations omitted).

---

[5] Amendments to the Sentencing Guidelines, April 27, 2023, at 3,
https://www.ussc.gov/guidelines/amendments/adopted-amendments-effective-november-1-2023.

United States v. Smith, No. 1:12-cr-479, 2024 WL 733221, at *2 (D. Md. Feb. 21, 2024) (quoting 2023 Amendments in Brief, U.S. Sent'g Comm'n).[6]

In Smith, the court used § 1B1.13(b)(5) to reduce a petitioner's sentence after finding the sentence was "extraordinarily excessive and disproportionate." Smith was assessed a 25-year sentence for a non-violent drug offense. He was the organizer and leader of the criminal enterprise and "profited handsomely." However, he was not charged with any violence related to the crime and there was no "non-speculative" suggestion that he directed or participated in any violence. Id., 2024 WL 733221 at *1–2. The court found that while there was no doubt that Smith harmed people with his criminal activity, his 25-year sentence "was not appropriately reflective of relative harms" because "non-violent crimes are less serious than violent crimes." Id. at *2. The court noted the average sentence lengths for violent crimes in the Fourth Circuit: 100 months for assault; 89 months for drug trafficking; 226 months for kidnapping; 304 months for murder; and 211 months for sexual abuse. Id. (citing U.S. Sent'g Comm'n, Statistical Information Packet, Fiscal Year 2022: Fourth Circuit, Table 7). The court found that Smith's 300-month sentence was longer than many murder sentences and that the national average sentence for murder was only 261 months. Id.

In addition, Smith's sentence was more than double that of one of his co-conspirators and although Smith was a leader of the enterprise, the court found that a sentence more than double that of his co-conspirator was not warranted under the circumstances. Id. at 3. See also United States v. Whitehurst, No. PJM 11-00567, 2024 WL 3455708, at *5 (D. Md. July 17,

---

[6] https://www.ussc.gov/sites/default/files/pdf/amendment-process/amenments-in-brief/AIB_814.pdf) (last viewed Oct. 11, 2024).

2024) (reducing sentence from 294 months to 205 months under § 1B1.13(b)(5) based on great disparity between co-defendants' sentences).

The court also considered Smith's assertion that his elderly mother needed assistance, that under other circumstances the guidelines contemplated a sentence reduction under § 1B1.13(b)(6) for petitioners serving unusually long sentences when they had served 10 years, and that Smith had taken extensive rehabilitative steps. Smith, 2024 WL 733221, at *3. The court clarified that neither Smith's unsubstantiated claim about his mother's health, nor his rehabilitation, alone or together, would be grounds for compassionate release, but the circumstances were noted to show only that the decision "was in concert with the applicable Sentencing Commission Policy Statement . . .." Id. n.7. The court concluded that taking all of Smith's submissions into consideration, extraordinary and compelling reasons warranted a sentence reduction under the catch-all provision in § 1B1.13(b)(5). Id. After considering the 18 U.S.C. § 3553(a) factors, the court reduced Smith's sentence from 300 months to 240 months. Id. at *3–5. See also United States v. Moreira, No. 06-20021-01-KHV, 2024 WL 378032, at *4 (D. Kan. Jan. 31, 2024) (reducing sentence for non-violent drug offense from life to 292 months under § 1B1.13(b)(5) based on length of sentence, the petitioner's ineligibility for good-time credits because of his status as an alien, his youth at the time of the offense, which suggested he was less culpable than an average adult offender, his lack of prior criminal history, and his remarkable rehabilitation while in prison).

In United States v. Brown, No. 2:95-cr-66(2), 2024 WL 409062 (S.D. Ohio Feb. 2, 2024), the petitioner and his co-defendant were leaders of a conspiracy that committed a week-long series of robberies, in which they directed younger people to rob establishments while

17

they waited outside. The robberies netted approximately $15,000 and no one was hurt in any

of them. Id., 2024 WL 409062 at *1. Brown was tried and convicted of Hobbs Act robbery,

conspiracy to commit Hobbs Act robbery, armed bank robbery, robbery of a post office, and

six counts of carrying a firearm in relation to a crime of violence, in violation of 18 U.S.C. §

924(c). At the time Brown was sentenced, the § 924(c) violations mandated consecutive 20-

year sentences for each violation after the first one. Id. Brown was sentenced to 1430 months

of imprisonment--more than 119 years--with 105 of the years resulting from the "stacked" §

924(c) convictions.

Brown sought a sentence reduction under 18 U.S.C. § 3582 and the court applied the

November 1, 2023, revised sentencing guidelines policy statement. The court first found that

Brown was entitled to relief under § 1B1.13(b)(6). He had served 28 years and in the absence

of the stacked § 924(c) convictions, he likely would have been subject to a sentence of 44

years, rather than 119 years.[7] The court concluded that Brown's circumstance was exactly the

sort envisioned by the Commission when it drafted § 1B1.13(b)(6) and found him eligible for

relief under that section of the policy statement. Id. at *7.

In the alternative, the court considered Brown's request for a sentence reduction under

§ 1B1.13(b)(5) and concluded that he was entitled to relief under that provision as well, even

---

[7] Prior to the First Step Act, simultaneous convictions, and subsequently sentences, under § 924(c) were "stacked," meaning that "a conviction was treated as 'second or subsequent,' triggering the 25-year minimum sentence, even if the first § 924(c) conviction was obtained in the same case." McCoy, 981 F.3d at 275. The First Step Act changed the sentencing structure for multiple convictions under § 924(c)—the statute now requiring a new violation "that occurs after a prior conviction under [the] subsection has become final" to trigger the mandatory minimum sentence of 25 years. 18 U.S.C. § 924(c)(i) (2018). The practical result of the change is that where defendants once faced a mandatory minimum sentence of consecutive 25- or 30-year terms when convicted of multiple firearms offenses in a single prosecution, they now face a mandatory minimum sentence of 5 years on each offense. United States v. Redd, 444 F. Supp. 3d 717, 720 (E.D. Va. March 16, 2020).

if consideration of the nonretroactive change to § 924(c) were foreclosed. Id. at *8. The court considered the "draconian and oppressive length" of his 119-year sentence, which guaranteed that Brown would die in prison for a crime in which no one was harmed. Id. The sentence also was six times longer than the average federal sentence for murder in the Sixth Circuit in the prior year. Id. (citing Sentencing Commission, Statistical Information Packet, Fiscal Year 2022).[8] Also, Brown's co-defendants who pled guilty were sentenced to between 8 months and 14 years in prison. Id. One co-defendant who went to trial like Brown did was found guilty and sentenced to 54 years and 2 months but was released in 2021 after serving approximately 26 years. Another co-defendant who went to trial and was sentenced to 100 years and 10 months also was released in 2021 after serving approximately 26 years. Id. The court found that when taken together, the extraordinary length of Brown's sentence, the great disparity between his sentence and those of his co-defendants, his very impressive record while incarcerated in the BOP, his age, his mother's age and poor health, his brother's poor health, and his strong family support, demonstrated extraordinary and compelling reasons for a sentence reduction under § 1B1.13(b)(5). Id. at *8–9. Notably, the court stated the following:

> The court wishes to make explicit that for the purposes of the § 1B1.13(b)(5) analysis, it is not comparing Mr. Brown's sentence to the sentence that he would likely receive today or to the sentence that someone else who committed crimes like Mr. Brown's today would receive. It is this Court's view that the combination of circumstances articulated in this subsection can stand alone as "extraordinary and compelling."

---

[8] https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2022/6c22.pdf.) (last viewed Oct. 11, 2024).

Id. at *8 n.5. The court finds the opinions in Smith and Brown persuasive and will examine Nicholas' motion in light of the analyses and conclusions presented in those cases.

In asserting that he is entitled to relief under § 1B1.13(b)(5), Nicholas returns to his argument that if he were sentenced today, he would be subject to a much shorter sentence because he no longer would be considered a career offender. He asserts that the sentencing disparity, combined with the evidence of rehabilitation and education while incarcerated in the Bureau of Prisons, amounts to an extraordinary and compelling reason for a sentence reduction. However, as discussed above, even though Nicholas seeks relief under § 1B1.13(b)(5), his assertion is based on a change in the law under Norman and he cannot get around the requirement in § 1B1.13(b)(6) and (c) that he serve 10 years of his sentence before becoming eligible for compassionate release based on a change in the law. The Brown court stated explicitly in its § 1B1.13(b)(5) analysis that it was not comparing Brown's sentence to the sentence that he would likely receive today or to the sentence that someone else who committed crimes like his today would receive. Rather, it was looking at the fact that Brown effectively was serving a life sentence for a non-violent crime for which his co-defendants had received much shorter sentences. The Smith court also relied on the sheer length of the petitioner's 25-year sentence for a non-violent drug offense to find that he was entitled to relief under § 1B1.13(b)(5).

In Nicholas' case, he was sentenced to 144 months for his role in the drug-trafficking conspiracy. In 2023, the national mean sentence for drug trafficking was 82 months and the mean in the Fourth Circuit was 91 months. U.S. Sent'g Comm'n, Statistical Information

Packet, Fiscal Year 2023: Fourth Circuit, Table 7.[9] While Nicholas' sentence is 62 months longer than the national average sentence for drug trafficking and 53 months longer than the average sentence in the Fourth Circuit, the difference between 144 months and the national and state averages does not raise the type of concern noted in Smith, where the difference between the national average sentence and the sentence Smith received was 211 months. Nor, in contrast to the petitioners in Smith and Brown, is Nicholas's sentence longer than the average sentence for murder in the Fourth Circuit, 295 months; kidnapping, 169 months; or sexual abuse, 222 months. See Smith, 2024 WL 733221 at *1–2; Brown, 2024 WL 409062 at *8. Simply put, Nicholas' sentence is not extraordinarily long, given his drug-trafficking conviction and his criminal history, which included multiple drug-trafficking offenses, a conviction for assault and battery, and three convictions related to possession of a firearm. PSR, ECF No. 1293 ¶¶ 163–171.

In addition, Nicholas' sentence was not grossly disproportionate to that of his co-defendants, one of whom received a much longer sentence of 240 months, one of whom received the same 144-month sentence, and one of whom received a sentence of 140 months. The remaining defendants who were sentenced to incarceration received sentences of 81 months, 41 months, and 24 months. Thus, Nicholas' sentence does not present the disparity issue raised by the courts in Smith, Brown, or Whitehurst.

In sum, the court does not find that Nicholas' sentence raises the same concerns as that of the petitioners in Smith, Brown, Whitehurst, or Moreira. There is no dispute that a

---

[9] https://www.ussc.gov/research/data-reports/geography/2023-federal-sentencing-statistics (last viewed October 15, 2024).

144-month sentence is long, and although his guidelines sentence would be shorter today, the sentence he received is well within the statutory range of zero to 20 years. The length of his sentence is not "draconian and oppressive" as was the sentence in Brown, 2024 WL 409062 at *8, and there is no "shocking disparity" between his sentence and that of his co-defendants. Id. at *9. Accordingly, the court does not find that Nicholas has presented facts showing that there is an extraordinary and compelling reason for granting a sentence reduction under § 1B1.13(b)(5).

### (4) Previous Decisions by this Court

The court notes that prior to November 1, 2023, when motions for sentence reductions brought under 18 U.S.C. § 3582 were analyzed by looking at McCoy rather than at the current policy statement, this court reduced sentences based on changes in the law even when petitioners had not yet served 10 years. See, e.g., United States v. Naylor, No. 7:14-cr-26, 2023 WL 4162280 (W.D. Va. June 23, 2023) (reducing sentence from a total 175 months to 129 months when petitioner had served approximately 9 years and 10 months of his sentence); United States v. Manning, No. 7:12-cr-42, 2022 WL 1464706 (W.D. Va. May 9, 2022) (reducing sentence from 188 months to 130 months when petitioner had served approximately 9 years and 9 months); United States v. Brown, Nos. 5:13-cr-17, 5:13cr30, 2022 WL 1482000 (W.D. Va. May 10, 2022) (reducing sentence from 216 months to 180 months when petitioner had served approximately 8 years and 8 months); United States v. Fennell, 570 F.Supp.3d 357 (W.D. Va. 2021) (reducing sentence from 360 months to 212 months when petitioner had served approximately 8 years and 3 months); United States v. Dillman, No. 5:11-CR-44, 2021 WL 3083034 (W.D. Va. July 21, 2021) (reducing sentence from 210 months to time served,

after petitioner had served approximately 9 years and 2 months); United States v. Shaw, No. 5:13-cr-25, 2021 WL 3007266 (W.D. Va. July 15, 2021) (reducing sentence from 216 months to 194 months when petitioner had served approximately 7 years and 4 months).

To the extent not reducing Nicholas' sentence under § 1B1.13(b)(6) because he has not yet served 10 years is inconsistent with this court's prior decisions, the court notes that it is bound by the law. Just as it followed McCoy in reducing sentences in the above-described cases, it now must adhere to the requirement that a court can only reduce a sentence when the reduction is consistent with applicable policy statements issued by the Commission. 18 U.S.C. § 3582(c)(1)(A)(i). As set forth at length above, the court does not find that reducing Nicholas' sentence would be consistent with USSG § 1B1.13(b) and (c).

### III. Conclusion

For the above-stated reasons, the court will **DENY** Nicholas' motions for compassionate release, ECF Nos. 1425, 1429. The Clerk is directed to send a copy of this memorandum opinion and accompanying order to the petitioner, his counsel of record, and the United States. An appropriate order will be entered.

It is so **ORDERED**.

Entered:  11/06/2024

Michael F. Urbanski
Senior United States District Judge

23